UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ROJAE BROWN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-02498-WTL-DML |
| | ) | |
| SUPERINTENDENT, | ) | |
| | ) | |
| Respondent. | ) | |

**ENTRY DENYING PETITION FOR WRIT OF HABEAS
CORPUS AND DIRECTING ENTRY OF FINAL JUDGMENT**

Rojae Brown's petition for a writ of habeas corpus challenges a prison disciplinary proceeding identified as No. NCF 15-12-0260. For the reasons explained in this Entry, Mr. Brown's habeas petition must be **denied**.

### I. Overview

Prisoners in Indiana custody may not be deprived of good-time credits, *Cochran v. Buss*, 381 F.3d 637, 639 (7th Cir. 2004) (per curiam), or of credit-earning class, *Montgomery v. Anderson*, 262 F.3d 641, 644-45 (7th Cir. 2001), without due process. The due process requirement is satisfied with the issuance of advance written notice of the charges, a limited opportunity to present evidence to an impartial decision-maker, a written statement articulating the reasons for the disciplinary action and the evidence justifying it, and "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *Wolff v. McDonnell*, 418 U.S. 539, 570-71 (1974); *Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003); *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000).

## II. The Disciplinary Proceeding

Mr. Brown's petition concerns an incident that occurred at New Castle Correctional Facility (NCCF) on December 20, 2015. On December 28, 2015, Internal Affairs Officer A. Williams issued a Report of Conduct reading as follows:

> The following Conduct Report has been issued to Offender Rojae Brown #988991 for violation of Adult Disciplinary Code Class B- 212 (Assault/Battery). On 12/20/15, Brown was identified on camera, by Lt. Harrison, as one offender involved in assaulting another offender. Internal Affairs investigation finds: Brown was seen entering the quiet room in F3 at the time the assault occurred and striking the offender. The offender was notified of the conduct report.

Dkt. No. 8-1.

On May 9, 2017, Lieutenant L. Storms reviewed and prepared a written summary of security video related to the incident. *See* Dkt. No. 8-6. Lieutenant Storms's summary states that video shows Mr. Brown entering the "quiet room." Shortly thereafter, an incident appearing to be a struggle or fight became visible. Roughly a minute later, an inmate exited the quiet room. Mr. Brown then exited the quiet room and appeared to be carrying a long-sleeved shirt he was wearing when he entered the quiet room. He proceeded to the bathroom, where he appeared to wash his hands and clothing.

The respondent filed a copy of the security video with the Court *ex parte*, Dkt. No. 11, and the Court finds Lieutenant Storms's summary to be accurate. The Court observes that the quiet room is difficult to see on the video. The individual the respondent has identified as Mr. Brown can be seen entering the quiet room, activity can be seen in the quiet room's doorway, and the inmate who preceded Mr. Brown in exiting the quiet room appears to be injured.

Mr. Brown maintained that he did not assault the inmate but rather entered the quiet room after the incident had already begun, attempted to break it up, and got blood on his hands and clothing as a result. *See* Dkt. No. 8-5. Lieutenant Storms also served as the hearing officer in this

disciplinary proceeding and found Mr. Brown guilty of aiding, abetting, attempting, or conspiring to commit assault or battery. *See id.* Sanctions included time in disciplinary segregation, loss of certain privileges, 90 days' lost credit time, and demotion of one credit-earning class. *See id.*

Lieutenant Storms's hearing report states that he found Mr. Brown guilty based on Officer Williams's conduct report, "video review," and Mr. Brown's statement in his own defense. *See id.*

### III. Analysis

Mr. Brown raises three issues in his petition. For the reasons set forth below, none of these issues provides a basis for habeas relief.

**A.     Sufficiency of Video Evidence**

Mr. Brown first challenges his disciplinary conviction on grounds that the security video did not show him assaulting or battering an inmate. Mr. Brown also questions whether he can be identified on the video at all given its poor quality and Lieutenant Storms's statement that he identified Mr. Brown "by his size and stature." *See* Dkt. No. 8-6. According to Mr. Brown, numerous inmates in his unit have similar physical features, and the video quality does not allow him to be clearly identified. *See* Dkt. No. 2 at 2; Dkt. No. 17 at 3–4.

Challenges to the sufficiency of the evidence are governed by the "some evidence" standard. "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016); *see Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted). The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d

978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56.

Video evidence shows that an inmate identified as Mr. Brown entered the quiet room, that another inmate later exited that room with injuries, and that Mr. Brown followed him shortly thereafter and washed his hands and clothing. Lieutenant Storms's review of the video evidence accurately captures these points. Mr. Brown admits that he entered the quiet room and got blood on himself. As such, there is some evidence in the record supporting the conclusion that Mr. Brown aided, abetted, attempted, or conspired to assault or batter the injured inmate.

Mr. Brown's petition raises a potential inaccuracy in Officer Williams's conduct report, which states that Mr. Brown was seen "striking the offender." Dkt. No. 8-1. To the extent the conduct report conveys that the *security video* shows Mr. Brown striking an inmate, Mr. Brown's concern is understandable. Lieutenant Storms's video summary does not assert the same conclusion, and the Court does not find that the video shows the inmate identified as Mr. Brown striking another inmate. Nevertheless, Lieutenant Storms prepared an accurate summary of the video evidence *and* served as the hearing officer. As such, it appears clear that Lieutenant Storms rendered his decision correctly understanding that Mr. Brown was not seen on video striking another inmate. Additionally, because Mr. Brown was convicted of aiding, abetting, attempting, or conspiring to assault or batter an inmate, the fact that he is not shown striking the inmate on camera does not undermine the conviction.

Mr. Brown's arguments concerning the video's quality and its ability to identify him are immaterial. Mr. Brown admits that he entered the quiet room during the incident. *See* Dkt. No. 8-5. Whether a person watching the video could clearly identify the person walking into and out of

4

the quiet room as Mr. Brown is moot if Mr. Brown admits that he walked into the quiet room during the incident.

Finally, the Court notes Mr. Brown's statement that he believes his identification on the video was "racially charged." Dkt. No. 2 at 2; Dkt. No.17 at 4. The Court does not understand Mr. Brown to be asserting that he was charged and convicted due to race-based prejudice or to be challenging the impartiality of his hearing officer. Rather, the Court understands that Mr. Brown is simply arguing that, given the large number of African American men in his unit, it would be difficult to identify him with any certainty on a low-quality security video. *See* Dkt. No. 2 at 2 ("There are a lot of short, tatted African-Americans at NCCF. How can he know for beyond a reasonable doubt that it was in fact me?"); Dkt. No. 17 at 4 ("How can I positively be identified as the alleged perpetrator when there were more African-Americans than just me in the pod when this incident allegedly occurred?"). As discussed above, this issue is irrelevant in view of Mr. Brown's admission that he entered the quiet room during the incident.

**B.     Absence of Evidence of Injuries**

Mr. Brown argues that his conviction is based on insufficient evidence because he was not found to have any injuries consistent with his participation in an assault or battery (such as red or swollen hands) following the incident. *See* Dkt. No. 2 at 2; Dkt. No. 17 at 4. But there is sufficient evidence to support Mr. Brown's conviction for aiding, abetting, attempting, or conspiring to assault or batter an inmate without evidence that he actually struck the inmate. An inmate commits the offense of "Conspiracy/Attempting/Aiding or Abetting" by "aiding, commanding, inducing, counseling, procuring or conspiring with another person" to commit another offense. *See* Ind. Dep't of Correction, *Adult Disciplinary Process*, App'x I, § 240 (June 1, 2015). The evidence

discussed in Part III(A) of this entry is sufficient to support the conclusion that Mr. Brown performed one or more of these actions, even without evidence that he actually struck the inmate.

**C.     Denial of Evidence**

Finally, Mr. Brown argues that he was wrongly denied the opportunity to review e-mails from Lieutenant Harrison that were used as evidence to support his conviction. Dkt. No. 2 at 2; Dkt. No. 17 at 5. The respondent has filed *ex parte* an e-mail from Lieutenant Harrison indicating that he spoke to the injured inmate following the incident and that Mr. Brown "was named as [one] of the several offenders that was *possibly involved* in the assault." Dkt. No. 10 at 1. This e-mail also states that Mr. Brown underwent a medical assessment following the incident and was not found to have any injuries. *Id.*

Due process requires "prison officials to disclose all material exculpatory evidence," unless that evidence "would unduly threaten institutional concerns." *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011) (citation and quotation marks omitted). In the prison disciplinary context, "the purpose of the [this] rule is to insure that the disciplinary board considers all of the evidence relevant to guilt or innocence and to enable the prisoner to present his or her best defense." *Id.* (citation and quotation marks omitted). Evidence is exculpatory if it undermines or contradicts the finding of guilty, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780-81 (7th Cir. 2008). When prison administrators believe a valid justification exists to withhold evidence, "'due process requires that the district court conduct an in camera review' to assess whether the undisclosed [evidence] is exculpatory." *Johnson v. Brown*, 381 Fed. Appx. 494, 497 (7th Cir. 2017) (quoting *Piggie*, 344 F.3d at 679).

It is not clear that Lieutenant Storms considered e-mails from Lieutenant Harrison in deciding Mr. Brown's disciplinary case. *See* dkt. 8-5 (identifying conduct report, video review, and Mr. Brown's statement as bases for decision). Nevertheless, Lieutenant Harrison's e-mail was not exculpatory. It simply identifies Mr. Brown as an inmate who may have been involved in the incident and documents that he was not found to be injured during a subsequent medical examination. These statements do not undermine the conclusion that Mr. Brown aided, abetted, attempted, or conspired to assault or batter an inmate. Because the e-mail was not exculpatory, Mr. Brown was not denied due process when he was not permitted to review the e-mail.

## IV. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Brown to the relief he seeks. Accordingly, Mr. Brown's petition for a writ of habeas corpus must be **denied** and the action dismissed. Judgment consistent with this entry shall now issue.

**IT IS SO ORDERED.**

Date: 5/21/18

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

ROJAE BROWN
988991
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

Abigail T. Rom
INDIANA ATTORNEY GENERAL
abby.rom@atg.in.gov